June 1821.

*Culver*
*vs.*
*Shriner.*

---

## COURT OF APPEALS, JUNE TERM, 1821.

### CULVER, Ex'r. of KEMP *vs.* SHRINER.

*Articles of agreement between K and S, in which K agrees to convey certain lands to S, in consideration that S would pay to K, or order, £600, and provide for the support of K and wife, during their lives; K to live on the lands and keep there two slaves, and that the future issue of such slaves should belong to S and his heirs, is a covenant and not a grant, and does not give S property in such issue.*

APPEAL from *Montgomery* county court. Replevin for two slaves. The appellee was the plaintiff below. The defendant, (the appellant,) pleaded—1. *Non cepit*, 2. Property in himself as executor of *Kemp*; and 3. Property in a stranger. The court below, *(Ridgely, A. J.)* directed the jury, that the plaintiff was entitled to recover, and on this direction he obtained a verdict and judgment. The defendant appealed to this court. The facts sufficiently appear in the court's opinion. The case was argued at June term last, before BUCHANAN, EARLE, JOHNSON, and DORSEY, J.

    *Stephen*, for the appellant, relied on *Jackson vs. Myers*, 3 Johns. Rep. 388. *Jones vs. Barkley*, 2 Dougl. 684, 689, 690. 2 Pow. on Cont. 2, 32, 40. 2 Johns. Rep. 207. *Campbell vs. Jones*, 6 T. R. 570. *Glazebrook vs. Woodrow*, 8 T. R. 370. *Goodison vs. Nunn*, 4 T. R. 761. 2 Bac. Ab. tit. Covenant, (L,) 92, 93. *The Duke of St. Al-*

*bans vs. Shore,* 1 *H. Blk.* 270, 279; and *Callonel vs.*
*Briggs,* 1 *Salk.* 113.

*Taney* and *Schley,* for the appellee, cited 3 *Bac. Ab`*
*tit. Grant,* (F,) *Ibid.* (D,) 384. *Grantham v. Hawley, Ho-*
*bert,* 132; and *Negro Jack vs. Hopewell,* decided in the
court of appeals at May term 1784.

                           *Curia Adv. Vult.*

At this term the opinion of the court was delivered by

JOHNSON, J. The present is an appeal from *Montgome-*
*ry* county court, in which the appellee, (the plaintiff be-
low,) obtained a judgment.

It was an action of replevin, brought to recover two ne-
groes from *Henry Culver,* who, as the executor of *Kemp,*
was in the possession of them; and whether that action was
sustainable, depends on the true construction of certain
articles of agreement entered into between *Peter Kemp*
(the defendant's testator,) and *Shriner,* the plaintiff below.

By the articles of agreement, bearing date the 4th Fe-
bruary 1792, *Kemp,* who was seized in fee of a tract of
land called *Kemp's Luck,* containing 164 acres, on which
was a valuable grist mill, and another tract called *Strife's*
*Purchase,* containing 156 acres, in the whole 320 acres, be-
ing indebted to sundry persons to the amount of £600, and
growing old and infirm, and having brought up from her in-
fancy *Eve* the wife of *Shriner,* and being desirous to pro-
vide for her and her children, and to rid himself from debt,
agreed to sell and convey the lands and mill to *Shriner* in
fee, as soon as *Shriner* paid to *Kemp,* or his order, £600.
An additional *consideration* for this conveyance mentioned
in the said agreement was, that *Shriner* should find and
provide for *Kemp,* and his wife, and the longest liver of
them, according to the following *provisions and agreements:*
*Kemp* and wife, and the survivor, to live in the upper sto-
ry of the dwelling-house during life, to have the use of one
third part of the garden, and to be supplied with necessary
fire-wood, *Shriner* to pay *Kemp* £50 annually, and to find
him and wife 300 weight of good pork, 152 of beef, 6
barrels of flour, 3 of Indian corn, &c. *Kemp* was also to
keep two negroes on the place, one named *Tom,* the other
*Nancy;* and *Kemp* also *agreed,* that all the increase of said

*Nancy*, should she have children, should belong to said *Shriner* and his heirs.

In the same agreement, *Kemp* covenants to convey the lands mentioned in said agreement, and *Shriner* to comply with the stipulations the agreement imposed on him. And for the true performance of each and every of the articles, covenants and agreements, entered into by each party, each bound himself to the other in the penalty of £5000.

The suit was brought to recover from the possession of *Culver*, the executor of *Kemp*, the issue of *Nancy*, born subsequent to the date of the above agreement.

The defendant, at the trial of the cause, prayed the court, that the covenant in relation to the increase of *Nancy*, relating to things not in *esse*, did not pass to *Shriner* any right of property, and that therefore the plaintiff was not entitled to recover. This opinion the court refused to give, and gave an opinion that the plaintiff *was entitled to recover.*

From that opinion the present appeal is made. From every part of the articles entered into between the parties, it is most evident, that each relied on the instrument of writing to compel a compliance with their respective stipulations. The one could force, or supposed he could force, a conveyance of the land on the payment of the stipulated sum; the other that he could compel the payment of the money for the land in case of refusal to pay; and *Kemp* thought he could resort to an action on the case for damages, in case any or every of the stipulations on the part of *Shriner* were not complied with. There can be no doubt that such was the obvious meaning of the parties, and that the agreement was expressed in appropriate terms to carry that meaning into effect as to every part of the instrument, except so far as relates to the claim respecting the two negroes now in dispute. For a violation, on the part of either, of any other part of the agreement, the remedy at law was either an action of debt for the penalty, or covenant. This is most clear and evident; and no satisfactory reason has been given why, for such violation, a different remedy exists.

The opinion of the court below can only be sustained on the principle, that *instantly* on the *execution* of the articles, the issue that *Nancy* might have, *potentially* passed to *Shriner*, no matter whether an individual act was subse-

quently done by either of them; that such issue must be the property of *Shriner*, no matter where or under what circumstances it might have been born. One would sup-, pose that a clause of such import would not have been in-serted in an agreement so cautiously expressed to insure the mutual interest of the parties.

It is evident to a majority of the court, that such was not the intention, but that the right to claim the negroes depended on the fulfilment of the engagements by *Shriner*.

Let us suppose *Shriner* never did pay the money, and that *Kemp* remained in his original possession—nay fur-ther, that he did not and could not pay the money, and that he released himself from his engagement under the insolvent laws—would the negroes belong to him or his trustee? Surely not. Let us suppose he did pay, and that *Kemp* and his wife took their station in the house, and that *Shriner* then refused to furnish the articles, and to permit them to keep *Nancy* on the place, and the issue was born off the land, could it be contended the issue belonged to *Shriner?* And yet to this extent must the articles be ex-tended to sustain the opinion of the court below; for, from the bill of exceptions, not an individual act stipulated to be done, appears to have taken place; from any thing be-fore the court, the transaction rested on the mere execu-tion of the instrument.

The clause in the instrument respecting the negroes is, "*Kemp* is to keep"—that is, (in connexion with the prior and subsequent parts of the articles,) *agrees* to keep. A-gain—"*Kemp* doth hereby *agree* that the issue (if any,) *shall* belong"—that is, shall, (other agreements having all been fulfilled,) become the *property of Shriner;* and such acts shall be done, as will make them his property.

But in support of the decision it has been contended, that as the unborn issue of female slaves can pass over by *grant*, and as the words in the articles are sufficiently ex-tensive to operate as a grant, although potentially only, yet on the birth of the issue, the complete property was in *Shriner.*

It appears to a majority of the court, that that was never designed to be its effect by the parties, and that it ought not to have that operation, unless the court are com-pelled to say they passed as granted, and were not com-prehended in the respective covenants.

The only case relied on as shewing that the property passed, is *Grantham vs. Hawley, Hobert,* 132. That case was this:—One *Sutton* being seized of land, leased it for 21 years to *Richard Sankee* by indenture, and did *covenant, grant* to and with *Sankee,* his executors and assigns, that it should be lawful for him to take and carry away to his own use such corn as should be growing on the ground at the end of the term. The lessor, *Sutton,* then conveyed the reversion to the plaintiff, *Grantham.* The executor of the lessee, after the end of the term, took the corn that was growing on the land at the expiration of the term, and sold it to *Hawley,* who gave his bond in the sum of £40, conditioned to pay £20, if the corn of right belonged to the plaintiff. In this case the plaintiff failed; and how was it possible for him to have succeeded? If the lessor, *Sutton,* could not, against his covenant and grant, claim the corn, neither could the person to whom he transferred the reversion, whether the right of the lessee to the corn rested on the *covenant* or the *grant.* It would be extraordinary indeed, if when the lessee was by deed expressly authorised to carry away the corn to his use, that the lessor should still have had right to it, merely because it was not carried away during the term.

There might be some analogy between the case in *Hobert,* and the one before the court, if it appeared that the contract had been complied with on the part of *Shriner,* that *Nancy* had been kept on the place, when the children were born, and that *Shriner* had got a possession which *Kemp's* executor sought to disturb. Then, in the language of the judges in that case, it might be said that the "property, and every right" to the issue, passed, for it was "both a covenant and grant." But as such a case is not before the court, the decision in *Hobert* is not an authority in point.

Buchanan, J. dissented.

JUDGMENT REVERSED.